*In re* HÉCTOR M. HERNÁNDEZ NAZARIO y LOUIS A. DE MIER-LE BLANC, querellados.

*Número:* CP-2001-4          *Resuelto:* 28 de marzo de 2003

*Roberto J. Sánchez Ramos*, procurador general, *Vanessa Lugo Flores*, subprocuradora general, e *Yvonne Casanova Pelosi*, procuradora general auxiliar; *Ygrí Rivera de Martínez*, comisionada especial; *Fernando Olivero Barreto*, abogado de los querellados; *Louis A. De Mier-Le Blanc, pro se; Héctor M. Hernández Nazario, pro se.*

PER CURIAM: El 25 de mayo de 2000, la Sra. Belinda Vélez Vázquez (Sra. Vélez Vázquez o quejosa) presentó ante el Procurador General (Procurador) una queja en contra de los abogados Héctor M. Hernández Nazario y Louis A. De Mier-Le Blanc (los querellados), en la que les imputa no haber sido orientada sobre los términos prescriptivos para ir en alzada de una determinación de la Junta de Síndicos del Sistema de Retiro de Empleados del Estado Libre Asociado de Puerto Rico (Junta de Síndicos). Alegó, en esencia, que esto causó que su caso fuera archivado sin haber tenido la oportunidad de recurrir al Tribunal del Circuito de Apelaciones (TCA).(1)

---

(1) De los hechos que fundamentan la interposición de la referida queja, se desprende que en 1993 la señora Vélez Vázquez contrató a los querellados para que la representaran ante las oficinas del Seguro Social, del Sistema de Retiro y del Fondo de Seguro del Estado en reclamos de derechos por los daños que sufrió como resultado de un accidente de trabajo.

La quejosa indicó que los abogados querellados presentaron una Moción de Reconsideración ante la Junta de Síndicos (Junta de Síndicos), esto debido a que esa entidad denegó el reclamo de la quejosa por incapacidad. Dicha moción fue rechazada de plano, por lo que la quejosa trató de comunicarse en varias ocasiones con los

Luego de varios trámites procesales, el 28 de marzo de 2001 el Procurador presentó ante este Tribunal la correspondiente querella en contra de los licenciados Hernández Nazario y De Mier-Le Blanc. En ésta se les imputó a cada uno dos cargos por alegadas violaciones a los Cánones 18 y 19 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

Con relación al primer cargo, el Procurador indicó que ambos letrados violentaron las disposiciones del Canon 18 del Código de Ética Profesional, *supra, el cual,* entre otras cosas, *impone a todo abogado el deber de defender los intereses de su cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad, y actuando en aquella forma que la profesión jurídica en general estime adecuada y responsable.*[2]

Respecto al segundo cargo, el Procurador General señaló que los querellados violentaron el Canon 19 del Código de Ética Profesional, *supra, el cual, inter alia, obliga a todo abogado a mantener siempre informado a su cliente de todo asunto importante que surja en el desarrollo del caso que se le encomendó.*[3]

---

querellados por temor a que el término para recurrir ante el Tribunal de Circuito de Apelaciones transcurriera. A pesar de las gestiones realizadas, le fue imposible comunicarse con éstos, por lo que procedió a comunicarse con la Junta de Síndicos. Le indicaron que su caso había sido archivado. Véase Informe de la Comisionada Especial, págs. 16–17.

[2] Según lo expuesto en dicha querella, en una vista celebrada en la Junta de Síndicos el 16 de mayo de 1995, el licenciado De Mier-Le Blanc acordó presentar en evidencia el expediente que la quejosa tenía en el Seguro Social, del cual alegadamente surgían hechos que beneficiaban su caso ante la Junta de Síndicos. Éste nunca lo hizo. Arguyó el Procurador General que "aunque [hubiera sido] improcedente concluir que el no haber presentado oportunamente la evidencia que existía en el expediente del Seguro Social de la quejosa fue la razón *per se*, por la cual la Junta le denegó a la quejosa la incapacidad ocupacional, sí podía afirmar[se] que la omisión de los abogados de presentar dicha prueba pudo haber privado a dicha Junta de todos los elementos de juicio necesarios para emitir una determinación distinta a la adjudicada". Querella, pág. 3.

[3] Sobre este particular, según surge de la querella presentada, los licenciados Hernández Nazario y De Mier-Le Blanc no contestaron las llamadas de la señora Vélez Vázquez, lo que causó que ésta no adviniera en conocimiento de las alternativas que tenía disponible una vez se denegó la reconsideración de su caso. Esto la privó de presentar oportunamente un recurso ante el foro judicial de la determinación tomada por la Junta de Síndicos. Véase Informe de la Comisionada Especial, pág. 17.

Los querellados contestaron la querella ofreciendo su versión del asunto y alegando que los cargos, a la luz de sus explicaciones, eran insostenibles.

Así las cosas, el 8 de marzo de 2001 designamos a la Hon. Ygrí Rivera de Martínez como Comisionada Especial para que escuchara la prueba y rindiera un informe en el presente caso. Dicho informe se presentó ante nos el 12 de agosto de 2002.

En cuanto al primer cargo, la Comisionada Especial indicó que el 10 de octubre de 2001, tanto el Procurador como los querellados sometieron el *Informe de Conferencia entre Abogados*, en el que se solicitaron que se enmendaran los hechos de la querella. En éste, *el Procurador concluyó que los querellados no fueron negligentes en sus gestiones y trámites relacionados con la presentación de evidencia ante la Junta de Síndicos, por lo que la imputación de la violación del citado Canon 18 era improcedente.*

En consecuencia, se enmendó la querella, y quedó solamente para dilucidarse en la vista evidenciaria la imputación sobre el Canon 19 del Código de Ética Profesional, *supra*, sobre la alegada falta de comunicación entre los abogados y la quejosa.

Luego de varias posposiciones, se celebró la vista el 13 de febrero de 2002.[4] En cuanto a esta segunda imputación, los querellados negaron haber sido negligentes. Aseguraron que durante todo el proceso advirtieron a la quejosa del ámbito de su representación legal, el alcance de la decisión, resolución u orden, los términos legales para presentar cada acción y el hecho de que cualquier trámite ante el foro apelativo tenía que gestionarlo a través de otro abogado. Alegaron, además, que la quejosa tuvo conocimiento directo a través del Sistema de Retiro y con tiempo suficiente para determinar si recurría al foro apelativo.

---

[4] Comparecieron a esa vista la Lcda. Ivonne Casanova Pelosi, procuradora general auxiliar, y el Lcdo. Fernando Olivero Barreto, en representación de la parte querellada, esto es el licenciado Hernández Nazario y el licenciado De Mier-Le Blanc.

Contrario a lo señalado por éstos, la señora Vélez Vázquez alegó que no le informaron del tiempo y de las alternativas que tenía disponible para ir en alzada.([5])

Durante la vista, ambas partes informaron a la Comisionada Especial de un acuerdo mediante el cual los querellados pagarían la suma de cuatro mil dólares a la señora Vélez Vázquez como compensación por cualquier daño que se le hubiese causado. En dicha transacción, estipularon que la señora Vélez Vázquez desistiría de cualquier queja pendiente ante este Honorable Tribunal y, además, que se le haría entrega de cualquier documento relacionado con el expediente que estuviese aún en posesión de los querellados.([6]) Así, pues, solicitaron a la Comisionada Especial que recomendara el archivo de la querella.

Por su parte, la Comisionada Especial entendió que el acuerdo cumplió con el propósito que persigue el procedimiento disciplinario. Por tal razón, recomendó a este Tribunal que lo acepte y archive la queja.([7])

## II

El deber de mantener informado al cliente es un elemento imprescindible en la relación fiduciaria abogado-cliente. *In re Criado Vázquez*, 155 D.P.R. 436 (2001).

Respecto a dicho deber, este Tribunal ha establecido que volverse inaccesible para un cliente, no responder sus lla-

---

([5]) Véase Informe de la Comisionada Especial, pág. 4.

([6]) La Procuradora General Auxiliar entendió que la transacción cumplió con el interés público que persigue este tipo de procedimientos. Se hizo constar que los abogados querellados gozan de buena reputación y que nunca habían sido objeto de procedimiento disciplinario alguno. Informaron, además, que no recibieron honorarios por los incidentes en el caso ante el Sistema de Retiro y que se trata de una querella que no imputa conducta inmoral ni atenta contra el interés público.

([7]) Sobre este particular, la Comisionada Especial señaló que el tiempo transcurrido y el enojoso trámite disciplinario, así como la compensación económica que formó parte del acuerdo, le debe haber servido de lección a los abogados para que en el futuro sean más cuidadosos y diligentes en el descargo de sus responsabilidades profesionales. Véase Informe de la Comisionada Especial, pág. 20.

madas, no mantenerlo informado de la situación procesal del caso, no informarlo del resultado adverso de su gestión o no informarlo inmediatamente de una sentencia de archivo o en sus méritos, entre otras cosas, contraviene lo establecido por el Canon 19 del Código de Ética Profesional, *supra*. Véanse: *In re Angueira Aguirre*, 157 D.P.R. 558 (2002); *In re Vélez Valentín*, 124 D.P.R. 403 (1989); *In re Díaz Alonso, Jr.*, 115 D.P.R. 755 (1984); *Colón Prieto v. Géigel*, 115 D.P.R. 232 (1984); *Maldonado v. Srio. de Rec. Naturales*, 113 D.P.R. 494 (1982).

■ A tono con lo anterior, todo abogado tiene el deber de comunicarse con sus clientes durante cada una de las etapas procesales en que se encuentren sus casos, así como informarles de todas las alternativas y los remedios que tienen a su alcance con respecto a la resolución, orden o sentencia que en su día recaiga. Es responsabilidad de todo abogado asegurarse de que su cliente entiende los efectos y las consecuencias de estas resoluciones, sentencias u órdenes. Esto incluye comunicarse con el cliente para discutir la posibilidad de apelar, aun cuando la representación legal de éstos no continúe más allá del foro administrativo. No hacerlo constituye una violación a lo dispuesto en el Canon 19 del Código de Ética Profesional, *supra*.

Procedemos a aplicar los preceptos enunciados al caso de marras.

### III

Examinado el asunto que se nos plantea en el caso de autos, vemos que la señora Vélez Vázquez intentó comunicarse en varias ocasiones con los abogados querellados, lo que le fue imposible. Éstos, a su vez, no fueron claros en torno a si efectuaron una gestión mínima de comunicación con la quejosa una vez la Junta de Síndicos les notificó de la denegatoria. Además, alegaron que la Junta fue la que le

notificó la resolución a la señora Vélez Vázquez, por lo que la quejosa debía tener conocimiento del término que tenía para recurrir. De estos argumentos, inferimos que los querellados entienden que una vez un tribunal u organismo administrativo notifica directamente al cliente de cualquier resolución u orden, no hay que comunicarse con él si ya se le ha orientado con anterioridad sobre los derechos y remedios que posee. No les asiste la razón.

Tan pronto la Junta de Síndicos notificó su denegación a reconsiderar el caso de la señora Vélez Vázquez, los querellados debieron comunicarse con ella e informarle nuevamente sobre su derecho a recurrir y los términos para ello, *así como inquirirle en cuanto a cualquier duda o preocupación que pudiera tener.* No hacerlo representó una violación al deber de informar que tiene todo abogado con respecto a su cliente. *In re Rosario,* 116 D.P.R. 462 (1985); *In re Cardel Matos,* 116 D.P.R. 1 (1985).

No obstante, a pesar de haber incurrido en dichas faltas, los querellados mantuvieron a la señora Vélez Vázquez informada de todos los asuntos importantes en los casos ante el Seguro Social y el Fondo de Seguro del Estado, así como desplegaron todas las diligencias importantes en ellos. Además, realizaron un acuerdo económico con la querellada como compensación por cualquier daño causado.

██    Sobre este particular, es menester reiterar que cualquier transacción realizada entre los abogados y sus ex clientes por los daños ocasionados por actuaciones impropias o antiéticas de los primeros, no precluye nuestra jurisdicción disciplinaria para entender en la querella que ha sido objeto de la transacción. En algunos casos, podrá constituir un atenuante y, en otros, podrá ser determinante para su archivo. *In re Pagán Ayala,* 117 D.P.R. 180, 186–187 (1986).

Por tales razones, y debido al interés de los querellados por corregir cualquier posible violación en la que hubieran

podido incurrir en el caso ante la Junta de Síndicos, entendemos que existen atenuantes que debemos tomar en consideración.

*Procedemos a amonestar al Lcdo. Héctor M. Hernández Nazario y al Lcdo. Louis A. De Mier-Le Blanc con el apercibimiento de que de incurrir en el futuro en conducta que viole los cánones del Código de Ética Profesional, estarán sujetos a medidas disciplinarias más severas.*

*Se dictará sentencia de conformidad.*